Morrison v. Wilson.

---

## MORRISON v. WILSON AND WIFE.

A PERFECT equity united with possession is, under our system, equivalent, for all purposes of defense, to a legal title.

The wife cannot convey her separate estate, acquired before the Act of 1850, whether legal or equitable, except by the joint deed of herself and husband.

The doctrine of estoppel *in pais*, has no application to the estates of married women. The Act of 1850 is enabling, and the estate vests only after compliance with the mode of conveyance prescribed by the Act.

Generally, a conveyance by a *feme covert*, not executed according to the forms prescribed by statute, is invalid.

The doctrine that fraud vitiates all contracts, must, when applied to married women, under our statutes, be limited to this: that a contract, so infected, can not be enforced; not that a fraudulent representation will divest a *feme's* title in the face of a statute declaring a different and exclusive mode of divestiture.

Where the deed of land bought for a married woman, is taken in the name of a third person, under an executory agreement on his part to convey to her, on the payment of a certain sum, and she goes into possession, she enters under claim of right, with a vested equitable interest in the land, which, on payment of the sum agreed, becomes a perfect equity.

And if, in such case, before the payment of the money, she acquires the real title from another source, the first deed being from parties without title, this real title is not divested in favor of a vendee or mortgagee of such third person, because she holds the inferior title from him, or entered, or claimed under it.

Morrison *v.* Wilson.

Claiming or taking the one title is no abandonment of the other. And her possession, if not to be referred to the good title, would not be referred exclusively to the bad.

The title of a married woman cannot be divested by an estoppel, based upon the fact of her taking possession under a bad title.

Possession of land is notice of the equity under which the party holds. And if, in this case, the good title was recorded, the person dealing with the land had notice, notwithstanding her representations that she held under the bad title. Her ignorance will not forfeit her estate.

A deed to a married woman is *prima facie* valid. And where it recites that the consideration is paid by another, for her exclusive benefit, the deed, *prima facie*, creates a separate estate in her.

Appeal from the Twelfth District.

Ejectment for a lot in San Francisco.

Complaint, among other things, avers that defendants entered under one Ford, and not otherwise; and, that plaintiff holds a title deraigned from Ford under mortgage sale.

Defendant, Wilson, claims no interest in the lot except such as results from the possession by his wife; denies the title and possession of Ford, and sets up title in his wife. Mrs. Wilson denies the exclusive possession of Ford, as averred in the complaint, or that she entered under him, or that there was any consideration for the mortgage from Ford to Perkins, and avers title in herself, derived through Perkins.

The Court, among other things, charged the jury in effect, that if they believed the defendants entered into possession under Ford, they were estopped from setting up title against Ford, and if plaintiff had acquired title from Ford, the verdict must be for plaintiff. The Court also charged, that if Perkins was induced to waive his lien and take the mortgage from Ford upon the representation on the part of defendants, that they had no interest in the lot, and that it belonged to Ford alone, and that plaintiff acquired title from Ford, then, whether Mrs. Wilson entered under Ford or not, defendants are estopped, as before.

The jury found for plaintiff, judgment accordingly. Defendants appeal.

*J. D. Thornton,* for Appellants, argued : that, as Mrs. Wilson was a married woman, she could not be estopped by her acts and declarations; that any concurrence, on the part of the wife, with the acts, declarations, or admissions, of the husband, relied on as an estoppel, would be rejected, on the presumption of law

that she was under the influence of the husband; and that the only way to divest the estate of a married woman, is by deed, signed and acknowledged, as prescribed by statute. (Wood's Dig. 483, Sec. 2.)

*G. F. & W. H. Sharp*, for Respondent.

Appellants having entered into possession under Respondent's grantor's title, the Court was right in giving Respondent's first instruction, and this Court will disregard all evidence of adverse title in Appellants or the homestead claim. (*Jackson* v. *Scissam*, 3 John. 499; *Jackson* v. *Bard*, 4 Id. 230; *Jackson* v. *Dennison*, 4 Wend. 558; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. R. 528; *Jackson* v. *Harper*, 5 Wend. 246; Greenleaf's Ev. Vol. 1, 137; 7 Cow. 717, 637; 15 Wend. 615; 6 How. 288.)

Defendants did not connect themselves with the title of Soule. (*Winans* v. *Christie*, 4 Cal. 70.)

The doctrine of estoppel is correctly given in the charge of the Court below. (*Hoen* v. *Simmons*, 1 Cal. 120; *Mathews* v. *Light*, 32 Maine, 305; *Whittington* v. *Wright*, 9 Geo. 23; 1 Story's Eq. Juris. Sec. 385; *Pickard* v. *Sears*, 6 A. & E. 469; *Welland Canal* v. *Hathaway*, 8 Wend. 483; 2 Hare & W. Lead. Cases in Eq. 47.) Defendants entering under Ford are also estopped. Acts of John Wilson must characterize the entry of family.

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

We understand the merits of this controversy to depend upon this state of facts: One Ford obtained a deed for the lot in dispute, from Hitchcock and Van Winkle, who had no title, but claimed under a Colton grant. Ford bought for Mrs. Wilson, though the title was taken in the name of Ford for her, and at her instance. Nearly contemporaneously, Ford executed to Mrs. Wilson an agreement to convey to her, as her separate property, this lot, on the payment of three hundred dollars, which sum there was evidence to show she paid, and the money was advanced as a gift to her by her son. Previously to this time, she had received a deed from another source, and this last seems to be the better title. The plaintiffs offered evidence tending to show that in consideration of a debt due for the

building of the house, and a waiver of a lien on it, to one Perkins, Ford, at the instance of Wilson and wife, executed a mortgage on the premises, the latter representing at the time that Ford was the owner, and in consequence of this representation, the mortgage was so taken. Plaintiff claims through this mortgage and sale under it. He asserts that this gives to him the right as against Mrs. Wilson, on the ground of estoppel. 1. Because she, having entered under Ford, cannot dispute his title, or that of Ford's representative, the plaintiff here. 2. Because these representations acted on, estop her from denying the title to be in Ford.

We think neither ground can be maintained. If the purchase were made by Ford in his own name for the benefit of Mrs. Wilson, Ford would be morally, if not legally, her Trustee; and if Ford, at or shortly after this time, gave her a writing to convey to her, on payment of the three hundred dollars, the two papers may be construed together, if they are shown to be parts of one general transaction. On the payment of the purchase money, Mrs. Wilson had a perfect equity, which, united with the possession, was equivalent, in our system, for all purposes of this defense, to a legal estate. This estate she could not convey except by joint deed of her husband and herself, any more than if it were a legal estate. The cases of *Jenkins* v. *McConico*, (26 Ala. 213,) and *Lee* v. *Bank of the United States*, (9 Leigh, 218,) and the authorities cited are conclusive on this point, even in the absence of statutory provisions like the Sixth Section of our Act regulating the disposition of estates of *femes covert.* The case of *Ingoldsby* v. *Juan*, in this Court, is not opposed to this view, for the doctrine there is limited to conveyances of married women of separate estates vested before the passage of the Act of 1850. The doctrine of estoppel *in pais* has no application to the estates of married women; for the Act of 1850 is enabling, the estate vesting only after compliance with the mode of conveyance prescribed by the statute.

*Palmer* v. *Cross*, (1 Smedes & Marshall, 48,) is a case upon a statute similar to our own. It was shown there that the wife stood by and saw some personal property sold by the husband as his own; and it was contended that she was estopped from afterwards claiming it. But the Court said: " The law has

thrown certain guards around a married woman to protect her from the influence of her husband. It has provided a mode by which alone she can be deprived of her real estate and, to use no stronger language, it is certainly very doubtful whether she can be deprived of her separate personal estate in any other mode than the one prescribed by the instrument of settlement. The Supreme Court of the United States, in the case already cited from 13 Peters, 107, decided that the mere silence of Mrs. Lee, as to her title, and her failure to obtrude her rights upon the notice of others, could not divest her of her property." The general rule is, that if the conveyance of a *feme covert* be not executed according to the forms prescribed by the statute, it is not valid. (*Elliott* v. *Peirsol*, 1 Peters, 328; *Hepburn* v. *Dubois*, 12 Id. 345; *West* v. *West*, 10 S. & R. 445. See, also, *James* v. *Fisk*, 9 Smedes and M. 152.) And, accordingly, it has often been held that when the acknowledgment was defective in any substantial particular, the *feme's* title did not pass. It would be strange if a mere defect of this kind avoided the deed, though regularly signed, and proven to have been fairly and voluntarily made, and yet a loose declaration of the *feme*, in the presence of the husband, and, possibly, made by his connivance or constraint, and in total ignorance by the wife, of its legal effect, or even of the real facts of the transaction, could pass her estate. It is obvious, if this be the rule, that every deed of the husband might be an estoppel, whether acknowledged or not, according to law, or even signed by the wife, since the representation in the presence of a purchaser or mortgagee, by the wife, of the property being the husband's, would be sufficient to estop her from denying the title to be in him. In truth, the paper signed by him, in her presence, purporting to convey the property as his, would amount to such representation and consequent estoppel. It is true that it is said by some writers that fraud vitiates all contracts, even those made by infants or *femes;* but, we apprehend, that in cases of married women, under statutes like ours, this doctrine is limited to this—that a contract so infected cannot be enforced; but not that a fraudulent representation will divest a *feme's* title in the face of a statute declaring a different and exclusive mode of divesture.

The second instruction asked for by the plaintiff, and given

Morrison *v.* Wilson.

by the Court directly contravenes this view. For the learned Judge below told the jury that, even if the defendants did not enter into possession of the lot under Ford, yet if they disclaimed title to induce Perkins to waive his lien and take a mortgage from Ford, this estopped her from contesting the title of plaintiffs deraigned through Ford.

It was a disputed fact whether the defendant entered under Ford, and, perhaps, the weight of evidence was that she did not.

If we concede that Mrs. Wilson entered under this executory agreement with Ford, she did so under claim of right, and with a vested equitable interest in the property, which, on payment of the purchase money, became a perfect equity. This equity, as we have said, she could no more dispose of by estoppel *in pais*, than if it were a legal estate; but if she could, having received the real title from another source, we do not perceive how that title is divested in favor of the plaintiff here, merely because she held an inferior title from Ford, or even entered, or claimed, under it. The result of such a doctrine would be to destroy the whole effect of the statute, for all a creditor or stranger would have to do, in order to divest the title to real estate of a *feme covert*, would be to get her or her husband to take and consent to hold under a bad title, and then both titles, by the doctrine of estoppel, might be subjected to a claim held by a predecessor under the vicious title. The good title was older in date than that acquired from Ford, and the evidence is by no means satisfactory, that she entered under Ford, or that, in getting in the Van Winkle and Hitchcock title, she did, or meant to do, anything more than to strengthen the title she held before, by getting in the outstanding claim. Besides, if the fact be, as stated by witnesses not contradicted, that Ford really bought for her, and made the executory agreement alluded to, we cannot perceive that she stood towards Ford in any other relation than any other purchaser, having two titles; or, that claiming or taking the last is any abandonment of the first. The possession, in such a case, if not referred to the good title, would not be referred exclusively to the bad. But if we hold that a *feme covert* cannot be divested of a title by parol or an estoppel *in pais*, directly operating upon the title, it would be illogical to hold that such divestiture could be effected by an estoppel created by taking possession under a bad title.

It is not pretended that she entered as tenant of Ford. She entered, if at all, as purchaser. She held the equitable estate, Ford merely the legal title. Being in possession, this was a notice of the equity. The payment of the purchase money perfected this equity, leaving nothing but the naked legal title outstanding in Ford, with a right to call for it at any time by Mrs. Wilson. Any person dealing with the estate was bound to inquire as to the true state of the title; and if the party in possession had a deed recorded, this was a notice of his or her title. A different question might arise, if a *feme covert* was in possession, under a deed or an executory agreement, not recorded, and a person dealing with the property on the faith of an apparent legal estate in another, inquired of her, and she represented that she had no title, but that the title was in another, and the inquirer then dealt with that other as the owner. But we do not understand that was this case—at least, it does not seem to be so put to the jury. In this case, the mortgagee did not see the legal title in Ford, for it was not in him, and therefore did not deal with the property on the faith of it. It may be very true that Mrs. Wilson, being in possession under the good title and the vicious title, said to Perkins she held under the Ford title— and that it was the real title; but a *feme covert* could scarcely be held to forfeit a good title because she was not learned enough in land law in 1851 or 1852, to know, what has so puzzled the Courts to determine—the relative strength of San Francisco . titles.

We have all along assumed the fact that Mrs. Wilson held a good title under the deed from Minor. This deed was executed 7th of May, 1851, and is made to her in exclusive property. A deed to a married woman is *prima facie* valid. (*Harmon* v. *James et ux.* 7 S. & M. 118.) And this deed recites that the consideration money was paid by George W. Soule, for the exclusive benefit of Mrs. Wilson. This, it seems to us, *prima facie*, created a separate estate in Mrs. Wilson. The deed, too, is witnessed by the same George W. Soule. It is true, that on the 3d of May before, Minor executed a deed of the lot to Soule, but this deed was not acknowledged until the 21st of April, 1852, or recorded until April 27th, 1852. When it was delivered does not appear. As between Soule and Mrs. Wilson, it would seem that the

witnessing of the deed to Mrs. Wilson, with this recital, and especially with the possession taken by Mrs. Wilson—if such was the fact—would strongly imply that the deed to Soule by Minor, was not delivered at the date of the deed to Mrs. Wilson, or, if delivered, that the unrecorded deed of Soule was, by contract or consent, postponed to the latter deed. If the money paid by Soule was furnished by Mrs. Wilson, would not this be an estoppel against Soule's setting up his secret deed? Could he encourage or assist in giving effect to the last deed, and yet hold it good for nothing? It is not necessary to consider this point further, as it has not been argued; for, upon the ground last taken, the judgment must be reversed; and this whole matter may be more fully presented on a future trial.

Nor is it necessary to decide whether, if Mrs. Wilson and Ford were in possession, and Perkins having no notice, by the record, or otherwise, of Mrs. Wilson's title, inquired of Wilson and wife, and Ford, as to the title, and was informed that the title was in Ford, and accordingly dealt with Ford as if he were owner, and thereby released a valuable right, the title of Mrs. Wilson would be bound by such a transaction. This question is left open and unaffected by this opinion.

Judgment reversed and cause remanded.

On petition for rehearing, the following opinion was delivered by BALDWIN, J.—TERRY, C. J. concurring:

The rehearing is denied. The main ground of reversal was the instruction of the Court, that whether Mrs. Wilson entered under Ford or not—which was a disputed fact before the jury— if the defendants, (Mrs. Wilson being one,) disclaimed title to induce Perkins to waive his lien and take a mortgage from Ford, this estopped her from contesting the title of plaintiffs, deraigned through Ford. We meant to assert, and think we sustained the proposition by reason and authority, that a *feme covert* under our statute, cannot divest her separate estate in any other mode than that pointed out by the Act; for to hold otherwise, would be to hold that the statute, where it says that the estate shall only be divested by joint deed of husband and wife, means that it may be divested by estoppel *in pais*.

As this error is sufficient to reverse the judgment, we so modify

the opinion as to leave the other points discussed in it open to future discussion, as it is suggested, with some plausibility, that a fuller examination may throw some light upon the questions, and the facts can be more fully presented.