[In Bank. — February 13, 1883.]

## THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA, APPELLANT, *v.* L. T. STROUP, RESPONDENT.

EJECTMENT — AGREEMENT TO CONVEY — FINDING — DEED. — The plaintiff claimed title to the land in controversy under a conveyance from one Bugbey, which, though absolute on its face, was intended as a mortgage, and had been foreclosed against Bugbey. This conveyance was recorded at the time of its execution, but prior thereto Bugbey had made an agreement in writing with the defendant to convey the land to him. The agreement was not recorded, but the defendant had possession of the land when the agreement was made, and remained in possession continuously thereafter. Subsequent to the conveyance to the plaintiff, Bugbey conveyed the land to the defendant in pursuance of the agreement. The court below found that the plaintiff never was the owner, or entitled to the possession of any part of the land. *Held*, that the fact of notice to the plaintiff of the agreement was included in this finding, and that the deed made by Bugbey to the defendant related back to the agreement, and vested the title in the defendant as against the plaintiff.

APPEAL from a judgment of the late District Court of the county of El Dorado, and from an order refusing a new trial.

The facts are stated in the opinion of MR. JUSTICE McKEE.

*R. C. Clark*, and *J. N. Young*, for Appellant.

*A. P. Catlin*, for Respondent.

McKEE, J. — This was an action in ejectment. The demanded premises are a portion of the southwest quarter of section sixteen, township ten, range eight east, of Mount Diablo meridian, for which and other parcels of real property the State of California, on the 22d of April, 1867, issued a patent to B. N. Bugbey. For several years before this patent was issued Bugbey and the defendant Stroup, adversely to each other, occupied separate portions of the quarter section, a picket fence constituting the division line between their claims. And, being in

possession, on the 24th of July, 1866, they made and entered into the following agreement in writing:—

"Whereas the said B. N. Bugbey seeks to obtain a title from the State of California to that tract of land described as follows, to wit: The southwest quarter of section sixteen, township ten, range eight east, Mount Diablo meridian; now then, the said B. N. Bugbey undertakes and agrees, as soon as he shall acquire a title to said land from the State, to make and execute to said Stroup a good and sufficient deed to all of that portion of said quarter section lying on the north side of a certain picket fence, now used and known as a line fence between the said Bugbey and Stroup on the northerly side of an exact range of said fence from the west line or west boundary of said quarter section to the east line or boundary of said quarter section, at the same price per acre and on the same terms that said Bugbey shall have paid to the State of California for said lands; and the said L. T. Stroup covenants and agrees that he will, in like manner, convey to said Bugbey all of that portion of the northwest quarter of said section sixteen being south or on the southerly side of said fence and range above described, on the same terms as provided above touching the conveyance of the said Bugbey; and it is hereby further agreed that the refusal of one to comply with this agreement that does [not] release the other; but each may be proceeded against, and compelled by law to make good this contract."

The agreement was not recorded, and on the 8th of June, 1870, Bugbey conveyed the land to the plaintiff by a deed, absolute on its face, which was intended as a mortgage to secure payment of a sum of money which Bugbey owed to the plaintiff. The deed was recorded on the day of its execution, and subsequently, the plaintiff by foreclosure proceedings, to which the defendant was not made a party, obtained a judgment and order of sale against Bugbey, under which the land was sold as a portion of the mortgaged premises to the plaintiff, to whom, on November 14, 1877, the sheriff conveyed it by deed, which purported to convey all the interest which Bugbey had in the land at the date of the judgment and decree of foreclosure. But on the 30th of May, 1874, Bugbey, in fulfillment of his agreement of 1866, had conveyed the land to the defendant. The deed was

recorded on the day of its execution. From the date of the agreement of which the deed was the fulfillment the defendant has continuously claimed the land as his own, adversely to Bugbey and all others. He has, also, during all the years of his claim of title before and after the date of the agreement with Bugbey occupied the land openly and notoriously by cultivation and improvements, having upon it a residence, barn, and stable, and having all of it, except what is covered by his improvements, planted in vines. He has thus been all the time in the adverse possession of the land.

The possession of the defendant being, in its inception, adverse to Bugbey, and continued until the date of the agreement of 1866, the defendant lost none of his rights by the agreement. Bugbey, according to the terms of the agreement, undertook to act for the defendant either as agent or trustee in obtaining for him from the State title to the land, of which he was in adverse possession, at the price per acre which the State asked for it from parties in possession. In either case Bugbey, when he obtained the State patent in 1867, held it, so far as it covered the defendant's land, for the benefit of the defendant. In holding it he was simply a trustee of the bare legal title, and was bound to convey it to the defendant upon the payment of the price which was stipulated to be paid. He himself could gain no title by failing to convey, nor could he transfer any title by mortgaging or conveying it to the plaintiff as against the defendant, who had received nothing, not even possession from him. Defendant was in no sense the trustee of Bugbey as to the possession of the land; he claimed and held it of his own right, for his own benefit, subject to no right of Bugbey. The only right which the latter had was a right which arose out of the agreement to recover the money which he had advanced for defendant in procuring the patent.

Being in the exclusive possession of the land under an independent right, that possession was sufficient to put the plaintiff upon inquiry as to the right under which the possession was held. (*Dutton* v. *Warschauer,* 21 Cal. 611; *Moss* v. *Atkinson,* 44 Cal. 1; *Thompson* v. *Pioche,* 44 Cal. 508.) "That the actual possession of land," says Mr. Justice Crockett, "with the exercise of the usual acts of ownership and dominion over it, operate

in law as constructive notice to all the world of the claim of title under which the possessor holds is too well settled to merit discussion." (*Talbert* v. *Singleton,* 42 Cal. 395.)   Presumptively, therefore, the plaintiff knew when it took its mortgage from Bugbey of the adverse possession and right of the defendant; and when Bugbey in 1874, in performance of his agreement to convey the title which he had obtained for the defendant in 1867, conveyed the title to the defendant, the deed of conveyance related back to the date of the agreement, and transferred the legal estate to the defendant as of the date at which he himself had obtained it, and the continuous adverse possession of the defendant thereafter, under his claim of title from the date of the patent to Bugbey, vested the defendant with absolute title to the land, under sections 322, 323, 326, of the Code of Civil Procedure, long before the commencement of the action. (*Arrington* v. *Liscom,* 34 Cal. 365; *Morris* v. *De Celis,* 51 Cal. 56; *Cannon* v. *Stockmon,* 36 Cal. 535; *McManus* v. *O'Sullivan,* 48 Cal. 7.)

But it is contended that the defendant took a lease of the land from the plaintiff, and that the taking of the lease estops him from denying the title of the plaintiff as his landlord.

The record shows as fact that, on the 21st of April, 1877, ten years after the date of the patent, plaintiff leased the land to the defendant for the term of eight months at the nominal rent of one dollar with the privilege of buying the land from the plaintiff at the expiration of the lease.   The defendant testified at the trial that he did not know how he came to execute the lease; that he signed it at the solicitation of some agent of the plaintiff, rather through fear and misapprehension.   "I did not," he says, "understand the thing at all.   I did not understand my rights."

Being the owner and in possession of the land at the date of the lease, without ever having at any time received the possession from his landlord or his grantor, and having accepted the lease through misapprehension of his rights, the defendant was not estopped by the lease.   (*Franklin* v. *Merida,* 35 Cal. 558; *Tewksbury* v. *Magraff,* 33 Cal. 245.)

It is also urged that the defendant is estopped because he offered to buy the title of the plaintiff.

The offer, if any was made at all, was made in 1877, many

years after the title of the defendant had become absolute under the Statute of Limitations. Such an offer when made by one in adverse possession before the Statute of Limitations had run in his favor is an acknowledgment of the title of the true owner, which will interrupt the running of the statute. (*Abbey Homestead* v. *Willard,* 48 Cal. 615; *Lovell* v. *Frost,* 44 Cal. 47; *McCracken* v. *San Francisco,* 16 Cal. 591.) But when made after the statute has run, and title under it has become absolute, it does not affect the title, nor estop the person making the offer from maintaining his title in any litigation concerning it in which he may be involved. The defendant had the same right as any other owner of property to fortify the title by which he held possession by the purchase of any other title which in his judgment might protect him in the quiet enjoyment of his own against the annoyance or expense of litigation.

We find no errors in the record.

Judgment and order affirmed.

MORRISON, C. J., ROSS, J., MYRICK, J., THORNTON, J., McKINSTRY, J., and SHARPSTEIN, J., concurring specially.— The general finding in favor of the defendant includes a finding that the plaintiff had notice of the agreement between Bugbey and defendant of date July 24, 1866. The deed subsequently made by Bugbey to defendant related back to the agreement, and vested the title to the property in question in defendant as against the plaintiff. For these reasons we concur in the judgment.