[L. A. No. 6332. In Bank.—June 27, 1922.]

## CHANNING FOLLETTE, Appellant, v. PACIFIC LIGHT AND POWER CORPORATION (a Corporation), Respondent.

[1] TORRENS LAND ACT—OCCUPANTS OF PROPERTY—NOTICE OF PROCEEDING—PERSONAL SERVICE.—In view of the provisions of sections 5 and 12 of the Torrens land title law (Stats. 1915, p. 1932), the notice to be issued upon the filing of a petition for registration of title is required to be personally served upon occupants of the property, where they are residents of the state and can with reasonable diligence be found and served therein, and in the absence of such a service, there is as to them no due process of law.

[2] ID.—EASEMENT IN PROPERTY—ABSENCE OF PERSONAL SERVICE OF NOTICE UPON OWNER—VOID DECREE.—A decree in a proceeding under the Torrens Land Title Act declaring the petitioner to be the sole and exclusive owner of the fee-simple title of the property to the exclusion of the rights and interests of one owning an easement therein who was not given personal notice of the proceeding because its name was not mentioned in the petition as an occupant as required by section 5 of the act, is void, as to such owner, as having been obtained without due process of law, notwithstanding notice was given by publication.

[3] ID.—EJECTMENT—CROSS-COMPLAINT—DIRECT ATTACK UPON—TORRENS DECREE.—In an action of ejectment, in which the plaintiff

189 Cal.—12

as the sole foundation of his right to maintain the action, based his asserted title upon a decree obtained in a proceeding under the Torrens Act, a cross-complaint setting forth facts showing lack of jurisdiction in the court to render such decree, alleging that it was procured by fraud and praying for affirmative relief, was a direct and not a collateral attack.

[4] ID.—WAIVER OF OBJECTION—EFFECT OF STIPULATION.—Where after. the service and filing of the defendant's answer in such action, in which he directly assailed the Torrens decree, the parties entered into a stipulation as to the facts of the case in which it was expressly admitted by the plaintiff that no personal service of notice or process was made upon defendant in the Torrens proceeding and that defendant was at such time in the occupancy of the premises and a resident corporation within reach of the personal service of the process, the objection that the attack upon the decree was collateral, was waived.

[5] TORRENS LAND ACT—PURCHASER OF REGISTERED TITLE—CONSTITUTIONAL LAW.—The provisions of the Torrens land title law which purport to entitle the purchaser of a registered title to the premises in the actual possession and occupancy of another to hold the same superior to the prior rights and interest of such possessor, notwithstanding such registered title is subject to the infirmity that it was obtained without personal service of notice of the proceeding upon such possessor, are obnoxious to the provision of the federal constitution which provides that persons shall not be deprived of their property without due process of law.

[6] VENDOR AND VENDEE—OCCUPANCY—BONA FIDE PURCHASER.—The actual, open, notorious and visible possession and occupancy of real property imparts notice to those dealing with the title thereto of the rights and interests of such possessor, and a person attempting to obtain title to such premises with such knowledge, or duty to acquire such knowledge as such notice imparts, cannot as to such possessor be or become a *bona fide* purchaser thereof to the extent of being able to assert a better right thereto than that which his predecessors had or could have asserted.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

B. Rey Schauer for Appellant.

Gibson, Dunn & Crutcher and E. E. Bacon for Respondent.

E. Swift Torrance and Jas. W. Bell, *Amici Curiae.*

RICHARDS, J., *pro tem.*—This appeal is from a judgment in the defendant's favor in an action of ejectment. The cause was tried upon an agreed statement of facts which may be summarized as follows: On and prior to the eighteenth day of November, 1915, one Charles H. Bogart was the owner of the premises in controversy, which are situated near Baldwin Park, Los Angeles County, California. On the above date he made a deed to the Pacific Light and Power Corporation, a California corporation having its offices and principal place of business in Los Angeles, California, of an easement of right of way over and across a portion of said premises for the uses of its light and power lines as a public utility corporation engaged in the transmission to its consumers and to the general public of electric energy in various forms. This conveyance was duly recorded and the grantee took possession of the portion of said premises required for the exercise of its said easement and has since continuously been in the actual and visible possession and occupancy thereof. On September 8, 1916, said Bogart filed a petition in the superior court of Los Angeles County for the registration of his title to said property under the provisions of the so-called "Torrens land title law," adopted as an initiative measure in 1915. (Stats. 1915, p. 1932.) The said Bogart did not in his said petition mention or in any way refer to the fact of the existence of said easement or of the occupancy and possession of any portion of said premises by his said grantee thereunder nor did the name of or any reference to the Pacific Light and Power Corporation appear therein, but the said Bogart alleged that he himself was and for more than five years last past had been in the actual, exclusive, and adverse possession of said premises and of the whole thereof, claiming to own the title thereto in fee simple as against all the world. Upon the filing of said petition the court ordered notice of the hearing thereon to be given as provided in said law and the said notice was thereupon published in a newspaper of general circulation in said county for four successive weeks. No service of said notice other than by said publication was made and it is an admitted fact in the case that

no other service thereof, or of any other process, was had upon the Pacific Light and Power Corporation and that neither said published notice nor any knowledge of the pendency of said proceedings ever came to its attention until about the time of the institution of the present action by the successor in interest of the said Bogart. On December 18, 1916, the trial court, upon proof of said publication of said notice and after hearing had upon said petition, made and entered a decree of registration decreeing said Bogart to be the sole and exclusive owner in fee simple of said premises and the whole thereof; and thereupon a certificate of title was issued to him in conformity with said decree. Thereafter and on January 17, 1917, said Bogart sold said premises to one Leo Gibbs, who paid full value therefor and who relied exclusively upon the said certificate of title to support his claim of being an innocent purchaser for value. On February 16, 1917, said Gibbs sold the premises in question to Channing H. Follette, the plaintiff herein, who similarly relied upon said certificate of title as supporting his claim as being an innocent purchaser thereof for value. Neither said Gibbs, nor said Follette went upon or examined, either in person or by agent, the premises they were thus purchasing, nor did either of them have any actual knowledge of the claim, interest, easement, occupancy or possession of the Pacific Light and Power Corporation in or to said premises or any portion thereof. Shortly after the purchase of said premises by said Follette he inspected the same, and finding the Pacific Light and Power Corporation in possession of its said portion thereof by virtue of its easement therein, commenced this action in ejectment against said corporation. The defendant appeared in due time and presented an answer denying generally the plaintiff's averments as to his exclusive title and right of possession to the portion of said premises covered by its said easement. It also presented and filed a further and separate answer setting forth in detail the proceedings which had been taken by said Bogart under said Land Title Act to obtain the registration of his title and showing that all mention of said defendant of its interest in or possession or occupancy of said premises had been omitted from said proceedings and that no notice thereof had ever been personally served upon said de-

fendant, nor knowledge thereof been brought to its attention during the course of its occupancy of said premises or prior to the institution of the present action, and that said defendant had at all said times been and still was in the actual, exclusive and complete possession and occupancy of the portion of said premises required in the exercise of its said easement and during all of the said time and by the use and exercise thereof had been and was engaged in supplying electricity to its customers in its capacity as a public service corporation. It was further alleged that said defendant was a California corporation having its offices and principal place of business in the city of Los Angeles and being at all of said times within reach of personal service of notice. The defendant further alleged that the omission of the name, title and interest of said defendant by said Bogart and of the fact of its possession and occupancy of said premises from his petition for the registration of the title thereof under the said land title law and the failure of the said petitioner to serve upon said defendant any personal notice of the fact of the filing of said petition or of the hearing thereon were and each of them was willful and intentional and done for the purpose of defrauding said defendant and depriving it of its said interest in said premises without due process of law. The defendant, while denominating its foregoing pleading as an answer, prayed for the affirmative relief of having its title quieted to the portion of said premises occupied by its said easement and for such other and further relief as might be meet and just in the premises. The issues being thus made up, the parties, prior to the trial of the cause, entered into the stipulation as to the agreed facts in the case above noted, in the concluding paragraph of which it was stipulated and agreed that: ''For the purpose of enabling the court to enter any judgment in this action to which either of the parties may be entitled by reason of the law applicable to the facts herein set forth, it is further stipulated that the respective pleadings of the parties herein shall be deemed to be amended by incorporating therein appropriate allegations of any or all of the facts set forth in this stipulation, and appropriate prayer by each party for all of the relief to which such party is entitled upon the aforesaid facts.'' Upon the submission of the cause upon the fore-

going stipulation the trial court made its findings of fact in accordance therewith and for its conclusions of law thereon found that the defendant was entitled to judgment that the plaintiff take nothing by said action; that the certificate of title issued to said Bogart pursuant to said proceedings under said land title law, in so far as it purported in any way to affect the title, possession, and occupancy of said defendant in relation to that portion of said premises covered by its said easement and right of way, was fraudulently obtained by said Bogart and was null and void and that all subsequent certificates of title issued to the successors in interest of said Bogart which were predicated thereon were also null and void as to the interest of this defendant; that said defendant was the owner of its easement and right of way on and over the portion of said premises occupied thereby and was entitled to have its right, title, estate, occupancy and possession thereof quieted against the plaintiff and all persons claiming by, through or under him. The decree followed accordingly and from said judgment the plaintiff has taken and prosecutes this appeal.

[1] The first contention of the appellant upon this appeal is that the proceedings providing for the registration and certification of title in and under the said Torrens land title law are proceedings *in rem* and that the notices required to be given to persons who are or may be affected by such proceedings as having claims to or interests in the premises described therein, constitute, when shown to have been properly given as required by said act, due process of law, so as to give jurisdiction to the court in which such proceedings are instituted, to render a decree establishing and quieting the title to said premises in the persons found to be entitled thereto as against all the world and that in the instant case such proceeding was instituted by said Bogart and such procedure followed in the proper publication of the notices required by said law as to give said court jurisdiction to render and enter the decree establishing the title of said Bogart against all the world and particularly against the respondent herein, and hence the plaintiff and appellant herein, as successor of said Bogart, was entitled to a decree in his favor at the hands of the trial court in this action and hence is entitled to a reversal of

the judgment herein. To the proposition that the pro-
ceedings under the so-called Torrens land title law are in
the nature of proceedings *in rem*, and that when, by pur-
suing the provisions of said law as to the giving of the
notices required by its terms to be given to the persons or
classes of persons entitled to notice, the court acquires juris-
diction to establish and quiet title to the premises affected
by the proceedings, in the persons found to be entitled
thereto, and such decree is good and valid against all the
world, the appellant cites a large number of well-known de-
cisions, both of this court and courts of other jurisdictions,
dealing with proceedings *in rem* under similar enactments
having for their purpose the establishing, quieting and
registration of land titles. With these decisions the court
has no quarrel upon this appeal. The only question pre-
sented upon this first contention of the appellant is as to
whether or not the proceedings herein referred to have
been commenced and conducted in conformity with the
requirements of the said land title law so as to have given
to the trial court jurisdiction to render the decree it did
render establishing the title of said Bogart in said prem-
ises and the whole thereof and quieting the same as against
the claim, interest and easement of the respondent herein.
To resolve this proposition requires a closer examination
of the several provisions of the so-called Torrens land title
law. By the express terms of section 5 of said law the
petitioner is required to set forth, among the other facts
which his application must contain, ''a statement of whether
or not the land is occupied, and if so, the full name and
postoffice address of each occupant and what interest he has
or claims.'' Section 12 of the said section provides for the
form and contents of the notice to be issued upon the filing
of the petition and proceeds to provide for its service in the
following manner: ''When the notice is issued, service
thereof shall be made as follows: In all cases said notice
shall be published in a newspaper of general circulation,
published in the county to be designated by the court for
four successive weeks; if the notice is published in a
daily newspaper publication therein once a week for four
successive weeks shall be sufficient as to all parties who
have not been joined in the petition or assented thereto in
writing and who appear by the petition, or petition and ab-

stract, or report of the examination of title to be interested in the fee; all occupants named in the petition . . . shall be personally served with a copy of the notice attached to a copy of the petition, if they reside in the state and can with reasonable diligence be found and served therein; all owners of adjoining lands who have not given their written consent to the hearing of the petition and who reside in the state and can with reasonable diligence be found and served therein shall be served with a copy of said notice, without a copy of said petition, personally.'' From these excerpts from the body of the said land title law it appears to be the clear intendment of the law that as to every occupant of lands with respect to which the establishment and registration of the title is sought there must be a personal service of notice which serves as the process by which such person shall be brought within the jurisdiction of the court in which the proceeding for the establishment and registration of the title to the premises is pending. Any other interpretation of these essential provisions of the act giving the court jurisdiction over the subject matter and the parties interested in such proceedings would permit the petitioner by the mere omission of the name or names of those persons who were in the actual occupation of the premises in question from his petition, to avoid the express requirement of the law as to the personal service of the notice or process upon such person or persons. This would be to permit him to take advantage of his own wrong and to thus violate one of the most ancient and salutary axioms of our law. This view of the subject is in harmony with what has already been said by this court in several well-considered cases involving the power of the legislature to provide for substituted service or notice and process in proceedings *in rem.* In the case of *Title etc. Restoration Company* v. *Kerrigan,* 150 Cal. 317 [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 88 Pac. 363], Mr. Justice Sloss, in the course of an elaborate discussion of the subject, made use of this language: ''It is no doubt true that so far as substituted service upon a class of unknown claimants is permitted at all in proceedings which are merely *quasi in rem,* it rests upon the ground of necessity and that this necessity will not justify the omission of personal service upon all who could with reasonable diligence be ascertained and found.

This principle is recognized even in cases which sustain the power to bind unknown owners by substituted service in actions of the character now under consideration. (*Tyler* v. *Judges, etc.*, 175 Mass. 71 [55 N. E. 812]; *Shepard* v. *Ware*, 46 Minn. 174 [24 Am. St. Rep. 212, 48 N. W. 773].) But we think that a proper construction of the act under examination (the McEnerney Act) does require the plaintiff to designate and to serve as known claimants all whom with reasonable diligence he could ascertain to be claimants . . . The evident purpose of the act is to secure as far as possible actual notice of the proceeding to all known claimants by personal service if they reside and can be found within the state; by mailing if they cannot be so found or are nonresidents. We have no doubt that where the statute is thus careful to secure actual notice to known claimants, it should not be construed as intended to permit a plaintiff to willfully or negligently close his eyes to the means of knowledge and thus secure a decree by publication and posting alone, as against persons whose identity he might have learned by the use of due effort. . . . We are satisfied that the statute in question imposes upon the party seeking to proceed under it the duty of inquiry as to the names and residences of all persons who may claim an adverse interest in the property. . . . So construed the statute does not, nor can an action prosecuted under it, deprive any person of his property without due process of law.'' In the case of *Robinson* v. *Kerrigan,* 151 Cal. 40 [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129], which was a case involving the construction of the Torrens Land Title Act of 1897 [Stats. 1917, p. 138], for which the present law has since been substituted, attention was called to the fact that the proceeding under that act was in all important particulars of a similar character to that provided by the "McEnerney Act," and the decision of this court above referred to as construing that act was expressly approved and given application to the Torrens Land Title Act then under review. This earlier act provided for the inclusion in the petition of a statement:

"(e) Whether the land is occupied or unoccupied and if occupied the name and postoffice address of each occupant and what estate or interest he has or claims in the land.''

"(f) Whether the land is subject to any easement, lien or encumbrance, and if any the name and postoffice address of each holder thereof, the nature and amount of the same, and if recorded the book and page of the record."

The present law, as is shown by the foregoing excerpt therefrom, contains substantially the same requirement as to the contents of the petition. By the terms of the earlier act it was provided that notice of the time and place of hearing upon such petition should be given "to all parties interested as shown by the petition and the abstract or referee's report . . . and the owners of adjoining lands, in the same manner as the service of a summons in a civil action and by publication for at least four weeks in some newspaper of general circulation to be designated by the court." It will thus appear that this provision of the earlier act has in its substantial effect been carried into the present law. Commenting upon the foregoing provisions as to notice as embodied in the earlier act, Mr. Justice Shaw, in the case last above cited, says: "We construe this provision for service of notice to mean that the service thus to be made on these persons must be personal service except in those cases wherein, under sections 412 and 413 of the Code of Civil Procedure, service may be made by publication." This construction of the earlier statute would require personal service of notice or process provided for in the act, upon occupants of the property who are residents of the state and admittedly within reach of personal service of process and as to which property the title was sought to be established and certified under said earlier act, and we are of the opinion that a similar interpretation must be given to the like provisions of the present law. It is not intended by this opinion to intimate that as to persons who are in the actual possession or occupancy of real estate having or claiming an interest therein, the legislature may not provide for the service of notice by publication of pending proceedings by which their said interests in the property may be affected, imperiled, burdened or destroyed; such as proceedings for street improvements, for the assessment and collection of taxes or for the determination of the title to the premises. Such substituted service when provided for by the statute authorizing such proceedings has been uniformly held to be due process of law.

This, however, is not such a case, since under the express terms of the land title law under review the only service of notice of the proceedings to establish title which could be made upon occupants of the property was personal service. The provisions of the act as to publication of notice can have application only to those who were not in the possession or occupancy of the premises, and hence those provisions are a false quantity in the consideration of the case at bar. The case stands as though the only provision in the law as to the giving of notice was that requiring personal service upon the class of claimants in which this defendant is; and that notice not having been given there was in that proceeding and as to this defendant no due process of law. The distinction between these two classes of cases is expressly pointed out in *State* v. *Gilbert*, 45 Ohio St. 575 [60 Am. St. Rep. 756, 38 L. R. A. 519, 47 N. E. 551].

[2] There is another aspect of this subject which lends an added persuasiveness to the views above expressed. Persons who have an interest in real property, such as an easement therein, and who are in actual possession and occupancy of the portion of the property devoted to the exercise of such easement, are presumed to know the law under which they hold and exercise their said property rights and hence to know the content of the Torrens land title law; and having this knowledge they are assured by the express terms of that law that their rights and interests in said property will not be imperiled or called into question in any proceeding undertaken under said law, in which they have not been named as parties, and to which they have not been brought by personal service of notice. To adopt a construction of said law which would permit a petitioner thereunder to imperil or destroy the vested rights and interests of the occupants of the property by the simple process of omitting their names as parties to such proceedings and by so doing obtain jurisdiction by a mere publication of notice and without that personal service of process which the law designates as to those whose names are required to be set forth in said petition would be a manifest injustice and would work a departure from those constitutional principles which are as old as Magna Charta and which guarantee to the owners of vested interests in property that they shall not be deprived of these without

due process of law. We therefore hold in this case that the decree obtained by Bogart declaring him to be the sole and exclusive owner of the fee-simple title to the property in question to the exclusion of the rights and interests of the respondent herein, having been obtained without that personal notice of such proceeding upon this defendant in the actual occupancy and possession of a portion of the premises in question, was obtained without due process of law as to this respondent and hence was as to said Bogart utterly void. [3] The appellant, however, contends that, conceding the decree obtained by Bogart establishing his title to the whole of said premises to be thus void as to him, it was not void upon its face and hence, being regular upon its face, cannot be made the subject of collateral attack. The answer to this contention is that the assault which the defendant makes upon this decree is not a collateral but a direct attack. The plaintiff as the sole foundation of his right to maintain this action in ejectment bases his asserted title upon said decree. The defendant in his second and separate answer sets forth the facts showing lack of jurisdiction in the court to render and enter said decree and avers that the same was procured by said Bogart by fraud and it prays for affirmative relief. Although the defendant does not denominate its answer a cross-complaint, it is, in effect, a cross-complaint, and for the purposes of this appeal should be treated as such, particularly in view of the stipulation of the parties above referred to respecting the pleadings in the case. (*White* v. *Patton,* 87 Cal. 151 [25 Pac. 270]; *Hibernia etc. Soc.* v. *London Assur. Co.,* 128 Cal. 633 [79 Am. St. Rep. 73, 61 Pac. 278].) [4] There is yet another answer to this contention to be found in the stipulation of the parties as to the facts of the case to which reference has above been made. After the service and filing of the defendant's answer herein, in which we have seen he directly assails said decree, the parties to this action entered into said stipulation, in which it was expressly admitted by the plaintiff that no personal service of notice or process in the prior proceedings under the Torrens land title law was ever made upon the defendant, and further admits that prior to and at the time of the institution and prosecution of said proceeding the defendant was in the actual possession and occupancy of the premises and was a resi-

dent corporation within reach of the personal service of the process. The said agreed statement of facts containing these admissions was offered and admitted in evidence without objection. When the attack which the defendant makes upon said decree is not only not resisted as collateral but when the facts upon which it relies to establish that the decree is void are expressly admitted by the party relying upon such decree and also expressly permitted to be introduced in evidence without objection, his present objection that the attack is collateral must be held to have been waived, and if, as a matter of law, the decree upon the admitted facts is void, it is the duty of the court to so declare. (*Hill* v. *City Cab etc. Co.,* 79 Cal. 188 [21 Pac. 728] ; *People* v. *Harrison,* 107 Cal. 541 [40 Pac. 956] ; *Lake* v. *Bonynge,* 161 Cal. 120 [118 Pac. 535].) In this state of the record it is obvious and undeniable that but for the provisions of the land title law hereinafter to be considered the title of the plaintiff herein as the successor in interest of Bogart would have been subject to the infirmities above pointed out, as inherent in the Bogart decree, and would also be subject to the prior easement of the respondent herein by virtue of the well-established rule by which the actual possession and occupancy of the property imparts notice of the right of the possessor and occupant to those who undertake to deal with the property or the title thereto while such actual possession and occupancy exists. That under that rule a subsequent purchaser, even though he had paid full value for the property, could not be a purchaser in good faith under such circumstances, is borne out by the uniform course of decisions in this state from the very beginning of our judicial history. (*Stafford* v. *Lick,* 7 Cal. 479; *Partridge* v. *McKinney et al.,* 10 Cal. 181; *Morrison* v. *Wilson,* 13 Cal. 494 [73 Am. Dec. 593] ; *Lestrade* v. *Barth,* 19 Cal. 660; *Landers* v. *Bolton,* 26 Cal. 393; *Killey* v. *Wilson,* 33 Cal. 690; *Pell* v. *McElroy et al.,* 36 Cal. 268; *Jones* v. *Marks,* 47 Cal. 242; *Pacific Mutual etc. Co.* v. *Stroup,* 63 Cal. 150; *Dreyfus* v. *Hirt,* 82 Cal. 621 [23 Pac. 193] ; *Scheerer* v. *Cuddy,* 85 Cal. 270 [24 Pac. 713] ; *Hyde* v. *Mangan,* 88 Cal. 319 [26 Pac. 180]·; *Security Loan etc. Co.* v. *Willamette etc. Co. et al.,* 99 Cal. 636 [34 Pac. 321] ; *Bessho* v. *General Petroleum Co.,* 186 Cal. 133 [199 Pac. 22].)

This being so, the appellant herein is driven to his final contention, which is that notwithstanding the infirmities in the Bogart decree, and notwithstanding the fact that he took the title to the premises while the respondent was in the actual possession and occupancy of said premises in the exercise of said easement, he is still protected in the supremacy of his title, ownership, and right of possession to the whole of said premises by virtue of the finding of the trial court that he took the title to said premises for full value and without any actual knowledge of the existence of the respondent's easement or of its possession and occupancy of the said premises thereunder, and also by virtue of the following further provisions of the land title law upon which he particularly relies. These provisions of that act read as follows:

"Sec. 34. The registered owner of any estate or interest in land brought under this act shall, except in case of fraud to which he is a party, or of the person through whom he claims without valuable consideration paid in good faith, hold the same subject only to such estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the registrar's office, and free from all others, except:

"1. Any subsisting lease or agreement for a lease for a period not exceeding one year, where there is actual occupation of the land under lease. The term 'lease' shall include a verbal letting.

"2. All land embraced in the description contained in the certificate which has theretofore been legally dedicated as or declared by a competent court to be a public highway.

"3. Any subsisting right of way or other easement, created within one year before issue of the certificate upon, over, or in respect of the land.

"4. Any tax or special assessment for which a sale of the land has not been had at the date of the certificate of title.

"5. Such right of action or claim as is allowed by this act.

"6. Liens, claims, or rights arising under the laws of the United States, which the statutes of California cannot require to appear of record upon the register.....

"Sec. 36. Except in case of fraud, and except as herein otherwise provided, no person taking a transfer of

registered land, or any estate or interest therein, or of any charge upon the same, from the registered owner, shall be held to inquire into the circumstances under which, or the consideration for which, such owner or any previous registered owner was registered, or be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand, or interest; and the knowledge that any unregistered trust, lien, claim, demand or interest is in existence shall not of itself be imputed as fraud.

"Sec. 37. In case of fraud, any person defrauded shall have all rights and remedies that he would have had if the land were not under the provisions of this act; provided, that nothing contained in this section shall affect the title of a registered owner who has taken *bona fide* for a valuable consideration, or of any person *bona fide* claiming through or under him.

"Sec. 38. If a deed or other instrument is registered, which is forged, or executed by a person under legal disability, such registration shall be void; provided, that the title of a registered owner, who has taken *bona fide* for a valuable consideration, shall not be affected by reason of his claiming title through some one, the registration of whose right or interest was void, as provided in this section.

"Sec. 39. No unregistered estate, interest, power, right, claim, contract, or trust shall prevail against the title of a registered owner taking *bona fide* for a valuable consideration, or of any person *bona fide* claiming through or under him. . . .

"Sec. 41. In any action or proceeding brought for ejectment, partition, or possession of land, the certificate of title of a registered owner shall be held in every court to be conclusive evidence, except as herein otherwise provided, that such registered owner has a good and valid title to the land, and for the estate or interest therein mentioned or described, and that such registered owner is entitled to the possession of said land."

[5] It is the contention of the appellant that these sections of the act in question entitle the purchaser of a registered title to the premises for which he has paid full value, to hold the same by a title which shall be superior to every claim, title or interest which has not been protected

in the decree of registration or which is not expressly excepted from the application of the foregoing sections of the act; and hence that even though the respondent herein was in the open, actual, and visible possession and occupancy of the portion of said premises upon and over which its said easement was being exercised; and even though said decree of registration of the title to said premises was void as to his predecessor, Bogart, because obtained without that personal service of notice of the proceedings leading up to said decree, which could alone constitute due process of law, plaintiff's asserted title as the sole and exclusive owner of said premises in fee simple, founded upon said decree, must prevail over the respondent's easement by virtue of the foregoing provisions of the land title law. To give such a broad and far-reaching interpretation to these provisions of said law would be to sweep away all of those ancient safeguards which the person in the open, actual, visible, notorious possession and occupancy of the real property under whatever claim of interest or title had, against being deprived of his right or claim of right therein, without his day in court; and would be to go so far as to declare that such a possessor and occupant of real property under a claim of right, interest or ownership, however well founded, would be defenseless against the holder or transferee of a registered title under this act who had acquired the same, for a full consideration but without any examination of the premises or any inquiry as to its actual possession and occupancy by another; and it would even go so far as to compel the conclusion that the purchaser of such a registered title, even with actual knowledge of the possession, occupancy and claim of ownership of another, could still obtain by such purchase a superior title to the land. It is needless to say that such a destructive interpretation of these provisions of this law should not be adopted unless such a conclusion is found to be inevitable after a most searching scrutiny of the language and intendment of the law, since it is not to be presumed that the legislature in the enactment of statutes, or the people in the adoption of laws, intend to overturn long-established legal principles, unless such intention is made to clearly appear by express declaration or by necessary implication. (*In re Garcelon*, 104 Cal. 570, 584 [43 Am. St.

Rep. 134, 32 L. R. A. 595, 38 Pac. 414]; *Boyd* v. *United States,* 116 U. S. 616 [29 L. Ed. 746, 6 Sup. Ct. Rep. 524].)

A cursory reading of the several sections of the land title law above set forth discloses that in each of these the phrase "good faith" or its equivalent, *"bona fide,"* is employed in relation to purchasers of registered titles. If it were possible to so construe these terms as used in said law as having the same scope and meaning as that given them by the long course of decisions prior to the adoption of this law, the case would be simplified, for the reason that such purchasers of such registered title would still be required to take notice of the actual possession and occupancy of the premises by another and would still be bound to all that such notice imported, and hence could not be a *bona fide* purchaser of the premises as against the prior and superior rights and interests of such actual possessor thereof. But the framers of this law evidently intended that such should not be the interpretation to be placed upon these terms. By the provisions of section 34 of this law the only actual possession and occupation of the premises to which the title of the registered owner or his successor is subject is: (1) Of the holder of a lease or agreement for a lease for a period not exceeding one year. (2) Of a public highway. (3) Of a subsisting right of way or easement created within one year before issue of the certificate of title relied upon, over or in respect to the land. (4) The lien of taxes or special assessments. (5) Liens, claims or rights arising under the laws of the United States. The only two of the foregoing exceptions with which we are at present concerned are those relating to leases and easements. It might well be questioned, in passing, whether the selection of these two classes of occupants of premises claimed under a registered title as exempted from its terms does not deprive this law of that uniformity of operation which the state constitution requires in all general laws. (Const., art. I, sec. 11.) There would seem to be no reason why the actual occupant of premises under a lease for a term greater than one year should not be as much entitled to the protection which his actual occupancy thereunder would otherwise afford as would an occupant under a lease for less than a year; nor why an actual occupant of the premises under a contract of purchase should not be entitled

to the same protection as that accorded the occupant under a lease for less than one year; or why a tenant in common or a holder of a life estate in possession, or in fact any owner of any other interest in the fee should not be entitled to rely as safely upon his occupancy of the premises as this section of the act permits the lessee for less than a year to do. Nor does there appear to be any substantial reason why the owner and user of a right of way or other easement in, upon, or over the premises created more than one year before the issue of the certificate relied upon should not be as fully protected as the holder of such easement created *within* one year before the issuance of such certificate. This phase of the subject has, however, not been adequately presented upon this appeal and hence will not be finally passed upon at this time, since the decision, we think, can be placed upon other and broader grounds.

To return, then, to the purposes of the framers of this law as disclosed by its express terms, it would appear from a reading of section 36 thereof, above quoted, that except as to the favored classes of occupants above referred to the purchaser of a registered title shall not be held "to inquire into the circumstances under which any previous registered owner was registered"; and shall not "be affected with notice actual or constructive of any unregistered . . . interest"; and this section further declares that "knowledge that any unregistered . . . interest is in existence shall not of itself be imputed as fraud." It is thus positively and expressly stated by this section of the law, not only that the actual possession and occupancy of the premises by the holders of interests therein other than those excepted by the earlier section shall not impart notice of the rights of such possessors and occupants, but that even actual knowledge of their said possession and occupancy on the part of the purchaser of a registered title shall furnish no protection against such title. Applying this inescapable interpretation of these sections of this law to the case at bar, it would follow that even though the plaintiff had actual knowledge of the occupant's possession and occupancy of said premises in the exercise of its easement therein, and even though the plaintiff actually knew that the respondent was the owner of such easement by the purchase of the same from the plaintiff's predecessor,

Bogart; and even though the plaintiff actually knew that the right and interest of said respondent and its actual occupancy of said premises thereunder antedated the proceedings for the registration of Bogart's title thereto, the plaintiff could still rest serenely upon his registered title as superior to the respondent's right and interest in the premises and could maintain this suit in ejectment and oust the respondent therefrom. What, then, becomes of the ancient doctrine of *bona fides* and good faith in the purchases of real property? What of due process of law? Under this section of the law in question as thus interpreted these would no longer exist. It may be contended, however, that under section 37 of said law these ancient meanings and safeguards thus expressly destroyed have still been preserved and restored. That section reads as follows:

"Sec. 37. In case of fraud, any person defrauded shall have all rights and remedies that he would have had if the land were not under the provisions of this act; provided, that nothing contained in this section shall affect the title of a registered owner who has taken *bona fide* for a valuable consideration, or of any person *bona fide* claiming through or under him."

It may be pertinently inquired what the term *bona fide*, as twice employed in this section, is intended to mean. Was it intended that a purchaser having actual knowledge of the full extent of the prior rights and interests in the premises to be purchased could not with such knowledge be a purchaser in good faith? If so, what then becomes of the express terms of the former section declaring that such actual knowledge shall not be imputed as fraud? If not, then these two sections of the law are in open antagonism and confusion. This state of confusion is not relieved, but is rather increased and intensified by section 39 of the act, which declares that "no unregistered estate, interest, power, right, claim, contract, or trust shall prevail against the title of a registered owner taking *bona fide* for a valuable consideration, or of any person *bona fide* claiming through or under him." In the effort to relieve ourselves of this confusion we are necessarily brought to the determination of the question whether a purchaser of property which is in the actual, open, exclusive, notorious possession and occupancy of another can be or become a *bona fide* purchaser

of such property, so as to acquire title thereto which shall
be superior to the rights and interests of such possessor.
In the course of this inquiry it is essential to take note
of the important place which the fact of possession has
always held under our Anglo-American system of laws in
relation to rights in real property. The earliest mode of
conveyance of corporeal hereditaments known to the com-
mon law was that of feoffment, to which livery of seisin
or delivery of possession of the property was essential.
This method of conveyance prevailed during all those earlier
centuries when writings were infrequent, and persisted
down to the time of Charles II, when the first statute of
frauds was enacted. Persons out of possession of real estate
under these ancient modes of conveyance could not transfer
title to the same, and hence, necessarily, possession was the
best and most often the only indicia of title which the
owner had. From those ancient times down to the present,
by the unbroken rule of the common law and by the
uniform current of both English and American authority,
the actual possession and occupancy of real property im-
parted to all the world notice of the rights and interests
of the possessor. In ''Holmes' Lectures on the Common
Law'' it is pointed out that possession of property is one
of the most important concepts of the common law, having
its origin in that instinct which man shares with certain
of the lower animals, such as the dog and the seal, and by
which he will not allow himself to be dispossessed by either
force or fraud of what he holds without trying to get it
back again. The learned author and jurist further pro-
ceeds to show that the rights of possession and of owner-
ship have the same essential incidents, since, as to both,
the use of the property is the main element of its value.
For that reason he asserts that under the common law ''the
owner is allowed to exclude all and is accountable to no
one; the possessor is allowed to exclude all but one and is
accountable to no one but him.'' This concept of the im-
portance of possession as notice of the rights and interests
of the possessor has been firmly engrafted upon our Ameri-
can system of jurisprudence. In Washburn on Real Prop-
erty, volume 3, page 292 (sixth edition), it is stated that
''the courts in many states hold that open, notorious, ex-
clusive, unequivocal and visible possession by a grantee in

a deed is to be deemed notice of its having been made."
The courts of California are in the list of those cited by
the learned author in support of this doctrine. It was
held in a very early period in our judicial history that
"The fact of open, notorious, and exclusive possession and
occupation of lands by a stranger to a vendor's title, as of
record at the time of a purchase from and conveyance by
such a vendor out of possession, is sufficient to put such
purchaser upon inquiry as to the legal and equitable rights
of the party so in possession, and such vendee is presumed
to have purchased and taken a conveyance from the vendor
with full notice of all the legal and equitable rights in
the premises of such party in possession and in subordina-
tion to these rights." (*Pell* v. *McElroy, supra*.) And this
court in the same case further held that "he cannot be
regarded a purchaser in good faith who negligently or
willfully closes his eyes to visible pertinent facts, indicating
adverse interest in or encumbrances upon the estate he
seeks to acquire, and indulges in possibilities or probabili-
ties, and acts upon doubtful presumptions, when by the
exercise of prudent, reasonable diligence he could fully
inform himself of the real facts of the case." In the case
of *Scheerer* v. *Cuddy, supra*, this court said:

"Whether the respondent knew of the appellant's pos-
session, or not, is immaterial. It was his duty to know who
was in possession of the property before making the pur-
chase, and his purchase without ascertaining the fact must
be regarded as the strongest evidence of bad faith on his
part. The burden of making the proper inquiry was cast
upon him by the mere fact of actual possession on the part
of the appellant. If it were allowed that by failing to
acquaint himself with the fact of possession on the part
of another than the vendor the vendee could avoid the effect
of the rule above stated, he could purposely avoid any in-
quiry on the subject, and thereby evade the rule and its
consequences entirely."

[6] In the recent case of *Bessho* v. *General Petroleum
Co., supra*, the foregoing language from the case last above
cited was quoted and approved. It must, therefore, be
taken to be the long and well-settled law of this state that
the actual, open, notorious and visible possession and oc-
cupancy of real property imparts notice to those dealing

with the title thereto of the rights and interests of such possessor and that a person attempting to obtain title to such premises with such knowledge, or duty to acquire such knowledge, as such notice imparts, cannot as to such possessor be or become a *bona fide* purchaser thereof to the extent of being able to assert a better right or title thereto than that which his predecessors had or could have. asserted. The appellant herein cites no case in which the Torrens land title law has been given such effect as against the actual possessor and occupant of the property sought to be brought, as to its title, within its terms. The cases of *Reeve* v. *Kennedy*, 43 Cal. 643; *Hayden* v. *Hayden*, 46 Cal. 332, and *Doyle* v. *Hampton*, 159 Cal. 729 [116 Pac. 39], relied upon by the appellant, are not in point upon this question for the obvious reason that in none of the said cases were the rights and interests of possessors of property involved. Even in Australia and its adjacent islands, wherein the Torrens land title system had its origin and earliest development, it has been held that knowledge of existing rights in the possessor and occupant of property sought to be claimed under a registered title would serve to defeat the assertion of a superior right in the holder of such registered title. (*Merrie* v. *McKay*, 16 N. Z. L. R. 124; *Independent L. Co.* v. *Gardner*, 3 Sask. L. R. 140; *Conroy* v. *Knox*, 11 Qd. L. J. 112; *Biggs* v. *McEllister*, 14 S. O. Aus. L. R. 86; Hunter's Torrens Land Title Cases, 355, 366.)

Our conclusion therefore is: (1) That the registration of the title to the premises in question by Bogart, under whom the appellant herein claims, was, as to the respondent herein, void, as obtained by fraud and without such service of notice upon the respondent in the actual possession and occupancy of the premises as was required by the terms of the Torrens land title law in order to constitute due process of law. (2) That the respondent was entitled to assert the invalidity of said proceeding in this action and that its affirmative pleading herein constituted a direct attack upon the decree in such proceeding. (3) That the appellant, as the successor in interest of said Bogart, taking title under said void decree, was not, as to the respondent in the actual possession and occupancy of the premises, a purchaser in good faith of said title. (4) That the provi-

sions of the land title law which purport to entitle the purchaser of a registered title to the premises in the actual possession and occupancy of another to hold the same superior to the prior rights and interests of such possessor, notwithstanding that such registered title is subject to the infirmities shown to exist in the instant case, are obnoxious to the provision of the federal constitution, which provides that persons shall not be deprived of their property without due process of law.

The judgment is affirmed.

Shaw, C. J., Lennon, J., Sloane, J., Lawlor, J., and Wilbur, J., concurred.