Catalina S. WELLS, Individually, and as Attorney in Fact for Everett Roy Wells, Appellant,

v.

Francisco S. LIZAMA et al., Appellees.

No. 21798.

United States Court of Appeals
Ninth Circuit.

June 10, 1968.

E. R. Crain, Richard H. Benson, Agana, Guam, for appellants.

David M. Shapiro, Finton J. Phelan, Jr., J. U. Torres, Olen W. Burnett, Agana, Guam, for appellees.

Before CHAMBERS, BARNES and HAMLIN, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal from a judgment of dismissal as to all defendants in an action to declare three deeds, absolute on their face, to be mortgages.

The court found that plaintiff's husband in 1964 was the owner of record of two lots located in Asan, Guam, improved with two two-room apartments, wherein plaintiff, her husband and her eight children lived. The property was mortgaged to the Bank of America for $5,800. Plaintiff's husband originally met the payments due to the Bank of America, but then ceased making them. Plaintiff borrowed from one Vicente Cruz $537.27 to bring the overdue mortgage payments current, but plaintiff subsequently defaulted on such payments. Next plaintiff borrowed $1,000 from defendant Lizama in December 1964, at which time plaintiff executed a quitclaim deed of the property to Lizama, though title was still in her husband. The Bank of America mortgage was paid off, though the mortgage was not released of record. In January 1965, Mrs. Wells, as attorney in fact for her husband, executed a deed to Lizama.

Guam adopted in 1933 the Land Title Registration Act—section 1157 of the

Guam Civil Code.[1] In accordance with that Act, the grantee Lizama caused his titles to be registered, and as of January 6, 1955, new certificates of title were

1. Pertinent sections of the Land Title Registration Act of Guam:

Section 1157.31. REGISTRATION WHEN LAND TRANSFERRED. Every transfer of registered land shall be deemed to be registered under this act when the new certificate to the transferee shall have been marked as in the case of the first registration; and all other dealings shall be considered as registered when the memorial or notation shall have been entered in the register upon the folio constituted by the existing certificate of title of the land but, for the protection of the transferee or person claiming through any transfer or dealing, the registration shall relate back and be effective as of the time of filing the deed, instrument, or notice in the registrar's office pursuant to which the transfer, memorial, or notation is made.

Section 1157.33. TITLE OF REGISTERED OWNER SUBJECT TO WHAT ESTATES ONLY. The registered owner of any estate or interest in land obtaining a registered decree under this act shall, except in case of fraud to which he is a part, or fraud of the person through whom he claims without valuable consideration paid in good faith, hold the same subject only to such estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the registrar's office and free from all others, except:

1. Any subsisting lease or agreement for a lease for a period not exceeding 1 year, where there is actual occupation of the land under lease. The term "lease" shall include a verbal letting.

2. All land embraced in the description contained in the certificate which has theretofore been legally dedicated as or declared by competent court to be a public highway.

3. Any subsisting right of way or other easement, created within 1 year before issue of the certificate, upon, over, or in respect of the land.

4. Any tax or special assessment for which a sale of the land has not been had at the date of the certificate of title.

5. Such right of action or claim as is allowed by this act.

6. Liens, claims, or rights arising under the laws of the United States, which the law of Guam cannot require to appear of record upon the register.

Section 1157.34. TITLE NOT ACQUIRABLE BY ADVERSE POSSESSION. After land has been registered, no title thereto adverse or in derogation to the title of the registered owner shall be required by any length of possession.

Section 1157.35. TRANSFEREE OF REGISTERED LAND NOT REQUIRED TO INQUIRE OR AFFECTED WITH NOTICE. Except in case of fraud, and except as herein otherwise provided, no person taking a transfer of registered land, or any estate or interest therein, or any charge upon the same, from the registered owner, shall be held to inquire into the circumstances under which, or the consideration for which, such owner or any previous registered owner was registered, or be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand, or interest; and the knowledge that any unregistered trust, lien, claim, demand, or interest is in existence shall not of itself be imputed as fraud.

Section 1157.36. REMEDIES OF DEFRAUDED PARTY. In case of fraud, any person defrauded shall have all rights and remedies that he would have had if the land were not under the provisions of this act: Provided, that nothing contained in this section shall affect the title of a registered owner who has taken bona fide for a valuable consideration or of any person bona fide claiming through or under him.

Section 1157.37. EFFECT OF REGISTRATION WHERE DEED VOID OR EXECUTED BY PERSON UNDER DISABILITY. If a deed or other instrument is registered, which is forged, or executed by a person under legal disability, such registration shall be void: Provided, that the title of a registered owner, who has taken bona fide for a valuable consideration, shall not be affected by reason of his claiming title through someone, the registration of whose right or interest was void, as provided in this section.

Section 1157.38. UNREGISTERED TITLE DOES NOT PREVAIL AGAINST TITLE OF REGISTERED OWNER. No unregistered estate, interest, power, right, claim, contract, or trust shall prevail against the title of a registered owner taking bona fide for a valuable consideration or of any person bona fide claiming through or under him.

Section 1157.40. CONCLUSIVENESS OF CERTIFICATE IN ACTIONS OF EJECTMENT OR PARTITIONS OR POSSESSION. In any action or proceed-

issued to him. Regarding subsequent events, the district court made the following supported findings:

"These certificates of title show that he took title subject to the mortgage of $5,800.00. It then appears that Lizama wanted his money from plaintiff and that plaintiff got in touch with Vicente T. Cruz. Mr. Cruz in turn contacted Woodrow W. Gaspard, who

ing brought for ejectment, partitions, or possession of land, the certificate of title of a registered owner shall be held in every court to be conclusive evidence, except as herein otherwise provided, that such registered owner has a good and valid title to the land, and for the estate or interest therein mentioned or described, and that such registered owner is entitled to the possession of said land.

Section 1157.47. TRANSFER BY REGISTERED OWNER. A registered owner of land desiring to transfer his whole estate or interest therein, or some part or parcel thereof, or some undivided interest therein, or to convey an estate for life or years, may execute an instrument of conveyance in any form authorized by law for that purpose. Upon filing such instrument in the registrar's office, and surrendering to the registrar the duplicate certificate of title, the transfer shall be complete and the title so transferred shall vest in the transferee; thereupon, the registrar shall issue in duplicate and register as hereinbefore provided, a new certificate, certifying the title to the estate or interest in the land desired to be conveyed to be in the transferee, and shall note upon the original and duplicate certificates the date of the transfer, the name of the transferee, and the volume and folio in which the new certificate is registered, and shall stamp across the original and duplicate the word "cancelled," in whole or in part, as the case may be.

Section 1157.53. INSTRUMENT PURPORTING TO TRANSFER, LEASE, OR ENCUMBER REGISTERED LAND: EFFECT OF FILING. A deed, mortgage, lease, or other instrument purporting to convey, transfer, mortgage, lease, charge, or otherwise deal with the registered land, or any estate or interest therein, or charge upon the same, other than a will or a lease not exceeding 1 year where the land is in the actual possession of the lessee or his assigns, shall take effect only by way of contract between the parties thereto, and as authority to register the transfer, mortgage, lease, charge, or other dealing upon compliance with the terms of this act. On the filing of such instrument, the land, estate, interest, or charge shall become transferred, mortgaged, leased, charged, or dealt with according to the purport and terms of the deed, mortgage, lease, or other instrument. The registrar shall immediately, upon the filing of such instrument, stamp or write upon the original and duplicate certificates of title the word "transferred," "mortgaged," "leased," or otherwise, as the case may require, with the date of filing such instrument and sign such endorsement.

Section 1157.58. INSTRUMENTS INTENDED TO CREATE CHARGES UPON LAND: NEW CERTIFICATES. On the filing in the registrar's office of an instrument intended to create a charge on registered land and upon the production of the duplicate certificate of title, whenever it appears from the original certificate of title that the person intending to create the charge has the title and right to create such charge and the person in whose favor the same is sought to be created is entitled by the terms of this act to have the same registered, the registrar shall enter upon the original and duplicate certificates a memorial of the purport thereof, and the date of filing the instrument, with a reference thereto by its file number, which memorial shall be signed by the registrar. The registrar shall also note upon the instrument on file the number of the certificate of title where the memorial is entered. No new certificate of title shall be entered and no memorandum shall be made upon any certificate of title by the registrar in pursuance of any deed or other voluntary instrument, unless the owner's duplicate certificate of title is presented with such instrument, except in cases expressly provided for in this act, or upon the order of the court, for cause shown, and whenever such order is made, a memorial thereof shall be entered upon the new certificate of title and on the owner's duplicate. The production of the owner's duplicate certificate, whenever a voluntary instrument is presented for registration, shall constitute authority from the registered owner to the registrar to issue a new certificate or to make a memorial in accordance with such instrument and the new certificate or the memorial shall be binding upon the registered owner and upon all persons claiming under him in favor of every purchaser for value in good faith.

is engaged in the real estate business among other activities. He is president of First American Title Insurance and Escrow Company of Guam; Gaspard & Company, and later, when it was incorporated in 1966, defendant Marianas Star Press, Inc. Woodrow W. Gaspard directed that a title search be made of the property. He went to the premises and examined them and learned that they were occupied but was unable to contact the occupants because no one was at home. Mr. Gaspard did not inquire as to the balance, if any, owed on the Bank of America mortgage which the title search revealed had not been released of record. Woodrow W. Gaspard advanced $500.00 to Mr. Cruz on a commission he was to earn and advised his wife, the defendant Claudia L. Gaspard, an experienced businesswoman and whose agent he was, to invest $500.00. These sums were paid into First American Title Insurance and Escrow Company. Francisco S. Lizama received a check from First American for $1,000.00 and executed a deed on April 9, 1965 unto Vicente T. Cruz. On April 9, 1965, Vicente T. Cruz conveyed the property unto himself and Claudia L. Gaspard. Both of these deeds were acknowledged by Claudia L. Gaspard, a notary public. Both were recorded on April 9, 1965, and new certificates of title issued on that date; first to Vicente T. Cruz, and then to Vicente T. Cruz and Claudia L. Gaspard. The certificates showed a mortgage to the Bank of America in the amount of $5,800.00.

" * * * Subsequently Cruz deeded his undivided one-half of the property to Claudia L. Gaspard, and certificates of title were issued to her under date of February 23, 1966; these certificates to Mrs. Gaspard showed a release of the mortgage to Bank of America and therefore showed the property free and clear of any encumbrances. Mrs. Gaspard then deeded the property to Marianas Star Press, Inc., which corporation is controlled by her husband and herself subject to some outstanding stock, and new certificates of title were issued to that corporation. Marianas Star Press, Inc., a Guam corporation, borrowed from the Bank of Hawaii $67,575, being a 100% loan to pay for printing equipment and freight, and under date of May 17, 1966, the property was mortgaged to the Bank of Hawaii along with the printing equipment.

" * * * While Mr. Vicente T. Cruz had title, plaintiff admits that she was indebted to him for approximately $1,900.00, including the $1,-000.00 paid to Lizama by him. There was other testimony that the amount was, as claimed by Mr. Cruz, $2,500.00.

" * * * There is no evidence that Mrs. Gaspard was on notice of any adverse claim by plaintiff at the time she obtained title, except the smallness of the consideration, probably less than ten per cent (10%) of the value of the property. After these transactions had been consummated, and not earlier than January, 1966, Mr. Gaspard contacted plaintiff to determine when she would give up possession of the property. Mr. Gaspard told her he would pay the costs of moving, approximately $100.00 to $150.00. Plaintiff was in possession of the property at the time of the trial.

" * * * Concerning the transactions between plaintiff and Francisco S. Lizama, the testimony of Mr. Lizama is not materially inconsistent with that of the plaintiff, and plaintiff's counsel stated that no affirmative relief was sought against Lizama and that there was no objection to dismissal as to him." Record, at 34–37.

In the suit instituted below, plaintiff sought to have the deeds in question declared mortgages, and to be permitted to exercise her equity of redemption. In accord with the above findings of fact, however, the district court granted dismissals as to all defendants.

Two claims of error are now made:

■ *One:* That plaintiff's possession of the real property gave the Bank of

Hawaii constructive notice of her claim, after it loaned money to Marianas Star Press, Inc., and that the Bank could not rely solely on the certificate of title held by the mortgagor.[2]

*Two:* That Marianas Star Press, Inc., having knowledge (a) of possession in another person, and (b) of the gross inadequacy of the consideration paid for the property, is not protected by the Act.

We find both claims without merit, and we affirm.

## I

Appellant's first contention rests principally upon the two California cases of Follette v. Pacific Light & Power Corp., 189 Cal. 193, 208 P. 295, 23 A.L.R. 965 (1922), and J. R. Garrett Co. v. States, 3 Cal.2d 379, 4 P.2d 538 (1935).

The *Follette* case involved a situation in which an *original decree of ownership* under the California Torrens Act [3] was attacked by the corporate holder of an easement. Although in possession at the time of the decree proceedings, the corporation had received no notification of those proceedings and consequently the easement was not recognized in the registration. The court held that the failure to notify represented fraud on the part of the original owner and a denial of due process to the holder of the ease-

ment, and that parties claiming through the former could not, as against the latter, rely upon a certificate of title originally based on such proceedings. The attack on the title was termed "direct," and not "collateral."

Insofar as its effect on Guam law is concerned, we take *Follette* as being limited to defects in an *original* Torrens Act registration. Those jurisdictions which have passed upon the question have generally refused to extend the *Follette* principle to situations involving "subsequent" Torrens registrations (that is, registrations following one or more transfers of title). Sterling Nat'l Bank v. Fischer, 75 Colo. 371, 226 P. 146 (1924); In re Juran, 178 Minn. 55, 226 N.W. 201 (1929); Abrahamson v. Sundman, 174 Minn. 22, 218 N.W. 246 (1928); see Pae v. Stevens, 256 F.2d 208, 215 (9th Cir. 1958).[4] The *Juran* decision, supra, stated:

"Respondents stress the fact that the Frieds were in possession under their contract and cite numerous authorities to the effect that a person dealing with land is chargeable with notice of the rights of the one in possession. This is the unquestioned rule here and elsewhere as to unregistered land; but the Torrens Law has changed this rule as to registered land, and under that law

2. Appellant also urges that the Bank of Hawaii has not obtained a "memorial" of its lien upon the original and duplicate certificate of title. We need not consider this point, however, as it allegedly was not raised below, and certainly is contrary to the facts stipulated in the pre-trial order:
   "* * * All of the transfers of title were *duly recorded* and under the Land Title Registration Act of Guam the last certificate of title shows title in Mariana Star Press, Inc., *subject to the mortgage to the Bank of Hawaii.*" Record, at 24 (emphasis added).

3. The California statute was substantially identical to the present Guam Act, and was the source from which the latter Act was drawn upon its enactment in 1933. Thus, concededly, the *Follette* case must be accorded particular significance in any appraisal of Guam law regarding the factual situation which that case involved.

The question for decision, however, is whether the present case involves a congruent or a distinguishable set of facts.

4. But cf. Fawell v. Loop Bldg. Co., 46 Cal. App.2d 426, 116 P.2d 88 (1941); Carlson v. Carlson, 124 Cal.App. 207, 12 P.2d 165 (1932). Neither case is controlling here. In *Carlson* the claimant who sought to rely on the California Torrens Act was the executor of the registered owner's estate; the decedent would have been precluded in the circumstances there present from asserting his title against the unregistered possessor, and the court held that the executor's position was no different. There was thus no reliance upon the certificate of title. Where such reliance occurs at least as presumably it did here, we prefer the reasoning of the *Fischer, Juran,* and *Abrahamson* decision supra. The *Fawell* case was decided after Guam adopted its Land Title Registration Act. See note 3, supra.

possession of registered land is not notice of any rights under an unregistered deed or contract for deed. Abrahamson v. Sundman, 174 Minn. 22, 218 N.W. 246. That act abrogates the doctrine of constructive notice except as to matters noted on the certificate of title." 226 N.W. at 202.

And the Annotation at 42 A.L.R.2d 1387, 1389 (1955), summarizes the pertinent holdings as follows:

> "Although the right of a claimant in possession of the land is protected under most land title acts so far as the initial registration of the title is concerned unless he is given actual notice of the application and an opportunity to present his claim, a purchaser for value and in good faith may acquire a good title in reliance upon the certificate of title regardless of the fact that someone in actual possession of the land may present an adverse claim."

The second case cited in support of the appellant's initial contention, J. R. Garrett Co. v. States, does not appear to have involved Torrens Act registration. It referred to the "general [non-Torrens] rule" cited by the California Supreme Court in *Follette* at 189 Cal. 205, 3 Cal.2d at 381. The case is consequently of no aid to appellant here.

## II

We turn to appellant's second point. The question for decision is whether, under the Guam Act, it is fatal to the status of appellee Marianas Star Press, Inc., as a bona fide purchaser, that it had knowledge (a) that appellant was in possession of the property in question, and (b) that an extremely small sum had been paid for the property.

Appellant relies upon Warden v. Wyandotte Sav. Bank, 47 Cal.App.2d 352, 117 P.2d 910 (1941), as well as upon the *Follette* case, supra. Our previous discussion of *Follette,* and our reference to the general rule that the "constructive

notice" effect of possession is inapplicable in Torrens Act cases, may be incorporated by reference here. As to the *Warden* case, it is true that the plaintiff there was seeking the protection of the Torrens Act of California, and that certain language in the opinion, taken alone, supports appellant's position here. The facts of that case, however, render it inapplicable.

The defendant bank in *Warden* claimed title through a deed delivered in 1934 by a trustee in bankruptcy for one Koploy, Koploy being at that time the registered owner of the property under the Torrens Act. The 1934 deed was not registered pursuant to the Act. In 1938 Koploy gave a quitclaim deed [5] to the plaintiff Warden, describing himself therein as a "former owner." Previously, however, in 1937, *"the certificate of title showing Koploy as the owner of the property [had been] cancelled * * *,* title having been transferred to the state of California pursuant to a tax collector's deed for delinquent taxes." 47 Cal.App. 2d at 353–354, 117 P.2d at 911 (emphasis added).

Title was quieted in the defendant, the California court stating that

> "there was sufficient evidence from which the trial court might have inferred that plaintiff purchased the property with actual knowledge of the prior conveyance to defendant. In any event, the evidence would support a finding that the circumstances were such as to put plaintiff upon notice of the prior conveyance. Moreover, the evidence indicates that the consideration [ten dollars] for the deed from Koploy to plaintiff was inadequate, when viewed in the light of the evidence as to the value of the property." 47 Cal.App.2d at 355, 117 P.2d at 912.

But because Koploy's certificate of title had been canceled prior to the sale in question, this comment—and the court's holding—applied to a situation in which the vendor was not at the time of sale

---

5. The 1938 deed "was registered under the Torrens Act," but it did "not appear that a certificate of title was issued thereon." 47 Cal.App.2d at 353, 117 P.2d at 911.

the registered owner of the land in question. The strong provisions of the Act thus could not be relied upon by the purchaser, and the case ought not to determine our decision here.[6]

██ We believe the essential purpose of the Guam Land Title Registration Act—to allow confident reliance upon record title under the Act—would be defeated if plaintiff were to prevail here in spite of the fact that Marianas Star Press, Inc., had no actual knowledge of her unregistered claim. Considerations of equity buttress this conclusion, since plaintiff, by her own execution of deeds subject to registration under the Act—conduct conveniently suiting her own purposes—permitted the subsequent transfers now at issue to be consummated.

The judgment of the district court is affirmed.

6. Our interpretation of the *Warden* case has not been unanimously accepted. See 42 Cal.Jur. *Registration of Land Titles* § 20 (1958). We may note in this connection, however, that the case was decided after Guam's Land Title Registration Act was adopted, and is in no sense controlling upon us.