942 F.2d 794
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gregorio D. TAITAGUE and Henry Blas Blas, Plaintiffs-Appellants,
v.
FIRST ISLAND INDUSTRY, INC., a Guam Corporation, Calvo's
Insurance Underwriters, Inc., a Guam Corporation, Oxford
Properties and Finance, Ltd., a Hong Kong Corporation, The
Estate of Maria Torres Martinez Deceased, by Father Vicente
T. Martinez, Administrator, and all other persons unknown
(Does I through V) claiming any right, title, estate, lien
or interest in the real property described in the complaint
adverse to Plaintiffs' ownership, or any cloud upon
Plaintiffs' title thereto, Defendants-Appellees.
 No. 90-15217.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1991.
Decided Sept. 3, 1991.
 
 Before SCHROEDER, FLETCHER and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs-appellants Gregorio D. Taitague and Henry Blas Blas appeal the affirmance by the appellate division of the United States district court of Guam of the Superior Court of Guam's judgment against them in an action to quiet title arising from a boundary dispute. They contend that the appellate division erred in finding that their suit was barred under Guam's land registration law. We have jurisdiction under 48 U.S.C. § 1424-3(c). We affirm.
 
 FACTS
 
 3
 This case concerns a dispute over the legal boundary between the property of the appellants and the appellees. It is uncontested that the Martinez property has been registered under Guam's Torrens Land Title Registration System since 1964. The Taitague property has never been registered, although the appellants have held record title to the land since 1936.
 
 
 4
 The parties all agree with the findings of fact prepared by the Superior Court of Guam and adopted by the appellate division as the basis for its decision. These facts are as follows:
 
 
 5
 This boundary dispute has as its origin Land Registration Case No. 32-64 (of which the Court takes judicial notice) in which Pedro and Maria T. Martinez petitioned the Island Court of Guam for the initial registration of title to one parcel of land designated as Estate 16 Lot "B" Dandan, Municipality of Inarajan, Territory of Guam. [In that action, the petitioners] did not list in their petition [nor] personally serve the plaintiffs' predecessor in interest, Baldovino Babauta Taitague, as an occupier of land and adjacent landowner pursuant to Guam Civil Code §§ 1157.4 and 1157.11. (Land Title Registration Act). Further, [the 1964 Untalan] survey map relied upon in Land Registration Case No. 32-64 incorrectly depicted the course of the Ugum River which had traditionally established the boundary between the Taitague and Martinez properties. [The disputed property in which the plaintiffs seek to quiet title is thus a portion of what had traditionally been considered the Taitague family estate lying just north of the Ugum River in the municipality of Talofofo. T]he largely uncontradicted testimony put forth by plaintiffs establishes that they have been in possession of the disputed property since the late 1930's. The Taitagues have maintained houses on the property as well as various farming activities. The Martinezes, prior to 1964, had never made a claim to this property and, in fact, had constructed a fence on the opposite side of the Ugum River from the Taitague land for the purpose of holding cattle....
 
 
 6
 The property registered by Pedro and Maria T. Martinez in Land Registration Case No. 32-64 was subsequently sold in January of 1972 to James S. Lee & Co. (Guam) Ltd. and Calvo Finance Corporation. In 1974 James S. Lee & Co. (Guam) Ltd. sold its one-half undivided interest in the property to First Island Industry, Inc. Finally, in August of 1980, First Island Industry, Inc., transferred its interest to Oxford Properties and Finance Ltd. [All transfers of the Martinez property were made to bona fide purchasers and for value.] Each of the above grantees received a new Certificate of Title upon purchase of their respective interest. Thus, the Certificate of Title issued to Pedro and Maria T. Martinez, upon which plaintiffs premise their present suit, was canceled in 1974 upon transfer of the property to James S. Lee & Company and Calvo Finance Corporation.[1]
 
 
 7
 Superior Court of Guam, Decision and Order entered May 25, 1988, at 1-3 (bracketed alterations supplied by appellate division).
 
 
 8
 This action was originally instituted by the appellants' predecessor in interest, Baldovino Taitague, to quiet title to Lot 412, Municipal District of Talofofo, a portion of which is included within the bounds of Estate 16, Lot "B" Dandan. While the case was still before the trial court, Gregorio Taitague and Henry Blas Blas, Baldovino Taitague's son and grandson and successors in interest to the Taitague property, were substituted as plaintiffs. In May 1988, the Superior Court of Guam found in favor of the defendants.
 
 
 9
 Taitague and Blas filed a motion asking the court to amend its findings to further clarify the proper boundary line between their property and that of the defendants. The court denied that motion. On appeal to the Appellate Division of the United States District Court for the District of Guam, Taitague and Blas contended that the trial court had erred in its refusal to quiet title in the plaintiffs and in denying their motion for amendment of the judgment. The appellate division affirmed. Taitague and Blas timely appeal.
 
 STANDARD OF REVIEW
 
 10
 We review questions of law de novo, according "no deference to interpretations of local law by the Appellate Division of the District Court of Guam." Guam v. Yang, 850 F.2d 507, 511 (9th Cir.1988) (en banc). A ruling on a motion to amend the judgment is reviewed for abuse of discretion. Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir.1985), cert. denied, 474 U.S. 1059 (1986).
 
 DISCUSSION
 
 11
 The dispute arises from an error in the survey map relied upon by the Martinezes in their original land registration petition. The boundary between the Martinez property and the Taitague property had been assumed to be the Ugum River. The Superior Court explicitly found that "it is evident that the course of the Ugum River as depicted on the 1964 Untalan survey map is incorrect." Because of this error, the description of the Martinez property included a portion of what had been assumed to be Taitague property. It is undisputed that the Martinezes did not serve notice on Baldovino Taitague of their land registration action as required by Guam Civil Code § 1157.11.
 
 
 12
 In 1933, Guam adopted the Land Title Registration Act establishing a Torrens title system for the territory. Wells v. Lizama, 396 F.2d 877, 877-78 (9th Cir.1968). A Torrens title system is defined as:
 
 
 13
 A system for registration of land under which, upon the landowner's application, the court may, after appropriate proceedings, direct the issuance of a certificate of title. With exceptions, this certificate is conclusive as to applicant's estate in land.
 
 
 14
 Black's Law Dictionary (6th ed. 1990).
 
 
 15
 "[T]he right of a claimant in possession of the land is protected under most land title acts so far as the initial registration of the title is concerned unless he is given actual notice of the application and an opportunity to present his claim." Wells, 396 F.2d at 882 (quoting Annotation, 42 A.L.R.2d 1387, 1389 (1955)). If the Martinezes still owned the property, the error conceivably could be corrected, based on their failure to give notice to Baldovino Taitague of their land registration case as legally required. However, two subsequent transfers of the property have taken place since the original certificate of title was issued.
 
 
 16
 The Guam Land Registration Act is specifically designed to provide broad protection to subsequent bona fide purchasers for value. For example, a good faith subsequent purchaser is not required to look into the circumstances of the original, or previous, registration, or to have any notice, actual or constructive, of any adverse interest or claim. Guam Civ.Code § 1157.35 (now 21 Guam Code Ann. § 29137 (1989)). A subsequent bona fide purchaser for value holds her title against claims of fraud in the original registration or against claims that any previous registration was void. Guam Civ.Code §§ 1157.36, 1157.37 (21 Guam Code Ann. §§ 29138, 29139). The Act also provides that no unregistered owner shall prevail in a claim against the title of a registered owner who bona fide purchased the property for value. Guam Civ.Code § 1157.38 (21 Guam Code Ann. § 29140). Finally, once land has been registered and a certificate of title issued, no one may claim possession of the land by adverse possession. Guam Civ.Code § 1157.34 (21 Guam Code Ann. § 39136).
 
 
 17
 Taitague and Blas contend that the California Supreme Court's decision in Follette v. Pacific Light & Power Corp., 189 Cal. 193, 208 P. 295 (1922), creates an exception to this otherwise impenetrable title of a subsequent bona fide purchaser for value. We need not decide this issue, however, because we conclude that their claim is time barred. See Golden Nugget, Inc. v. American Stock Exchange, Inc., 828 F.2d 586, 590 (9th Cir.1987) (court of appeals may affirm on alternative legal basis adequately supported in record).
 
 
 18
 Although Baldovino Taitague did not receive notice of the conflicting land claim at the time of original registration in 1964, he received actual notice of the conflicting claim at least as early as October 1975, when he obtained the results of a survey of his property that he himself had authorized. The map produced by this survey, signed and dated by Baldovino Taitague in October 1975,[2] clearly shows a large portion of Taitague's property on his side of the Ugum river as included in Lot "B" Dandan, the lot registered to Martinez. In addition, a "SPECIAL NOTES" section on the map states that " 'PORTIONS OF LOT 412 [Taitague's property] WITHIN LOT B DANDAN' ARE SEPARATELY DESIGNATED TO INDICATE THAT THE WERE ERRONEOUSLY INCLUDED WITHIN LOT NO 'B' WHEN IT WAS REGISTERED...."
 
 
 19
 Under Guam's Land Title Registration Act, the limitations period is "one (1) year following the first registration, providing said first registration is not void for any of the reasons set forth in § 37 of this Act." Guam Civ.Code § 1157.44 (now 21 Guam Code Ann. § 29146 (1989)). Section 37 provides that registrations that have been forged or executed by a person under legal disability are void. Guam Civ.Code § 1157.37 (21 Guam Code Ann. § 29139). Section 37 does not apply in the present case.
 
 
 20
 Taitague and Blas argue that the one-year statute of limitations set forth in the Act does not apply because the failure of defendants' predecessor in interest to serve notice on Baldovino Taitague in the original registration proceeding rendered the registration void. However, the Act does not specify that mistake in description or failure to provide notice to an adjacent landowner are bases for voiding a registration. One provision of the Act preserves the rights and remedies of a defrauded party, but even that provision also notes that an action for fraud cannot "affect the title of a registered owner who has taken bona fide for a valuable consideration or of any person bona fide claiming through or under him." Guam Civ.Code § 1157.36 (21 Guam Code Ann. § 29138). Nothing in the Act authorizes a party who did not receive the required notice at the time of original registration, such as Taitague, to bring an action against a subsequent good faith purchaser to void the registration. More importantly, the statute of limitations does not contain any exception for such an action.
 
 
 21
 We recognize that Torrens act title registrations in Guam and California[3] have been set aside where notice was not served on an affected party. See Francisco v. Look, 537 F.2d 379 (9th Cir.1976) (Guam); Follette v. Pacific Light & Power Corp., 189 Cal. 193, 208 P. 295 (1922); Swartzbaugh v. Sargent, 30 Cal.App.2d 467, 86 P.2d 895 (Cal.Ct.App.1939). However, the case before us is different. In each of the cited cases the aggrieved parties acted soon enough after receiving notice of the adverse registration decree that their claims were not barred by any statute of limitations. In this case, even if we were to hold that the statute of limitations could be tolled equitably until Taitague had actual or constructive notice of the adverse registration decree, Taitague's claim still would be time-barred. Taitague's receipt of the survey map showing the conflicting claim put him on notice at least as early as October 1975. Even were we to apply equitable tolling, the statute of limitations period would have commenced to run at that time. Taitague waited over three years to commence this action; the limitations period therefore expired well before he filed his complaint in February 1979.
 
 
 22
 The appellants also contend that the appellate division erred in affirming the Superior Court's denial of their motion for amendment of the judgment. Their motion asked the court to find that the boundary between the two properties was the Ugum River rather than the line depicted on the land registration certificate. The appellate division correctly found that Taitague and Blas were trying to achieve the same result they sought in their quiet title action through different means. We agree with the appellate division that the Superior Court did not abuse its discretion in denying the motion to amend.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We note that the court's statement of facts contains an immaterial discrepancy. The court first states that the Martinezes sold the property in 1972 to James Lee & Co. and Calvo Finance Corp., but the last sentence of the quoted passage indicates the sale occurred in 1974. Whatever the correct date of the sale, it has no bearing on our decision in this appeal
 
 
 [2]
 Though the date and Taitague's signature on the map are not discernible on the copy of the map in the record furnished to us, the surveyor who prepared the map did sign and date it October 1975. Appellants have not disputed the claim of First Island Industry that Taitague authorized the survey and signed the map
 
 
 [3]
 California law is especially relevant because Guam's Land Title Registration Act essentially was adopted from California's land title registration law in 1933. See Wells, 396 F.2d at 881 n. 3